**UNITED STATES of America**

v.

**Raymond C. MITCHELL, d/b/a Ray Mitchell Realty Company.**

**Civ. A. No. 13467.**

United States District Court,
N. D. Georgia,
Atlanta Division.

Jan. 27, 1971.

John N. Mitchell, Atty. Gen., Jerris Leonard, Asst. Atty. Gen., Frank E. Schwelb and Thomas M. Keeling, Attys., U. S. Dept. of Justice, Washington, D. C., for plaintiff.

Hansell, Post, Brandon & Dorsey, Atlanta, Ga., for defendant.

ORDER

EDENFIELD, District Judge.

This is a "blockbusting" case brought by the Attorney General pursuant to 42 U.S.C.A. § 3613 alleging Defendant Ray Mitchell Realty Company has violated the provisions of 42 U.S.C.A. § 3604(e) and seeking an injunction to prohibit further violations. Defendants have moved for summary judgment on the following grounds:

(1) The acts alleged by plaintiff are not prohibited representations within the meaning of 42 U.S.C.A. § 3604(e);

(2) The acts alleged do not indicate a sufficient basis for the initiation of this suit by the Attorney General under either of the alternatives of 42 U.S.C.A. § 3613;

(3) The representations allegedly made by defendants are exempt from the operation of § 3604(e) by § 3603(b) (1);

(4) The defendants did not have the necessary intent to violate the Act;

(5) The Attorney General is barred from maintaining this action by the doctrine of laches; and

(6) Injunctive relief in this case would constitute an unconstitutional prior restraint on defendants' right to speech.

Defendants' primary contention on their motion for summary judgment is based on both the statutory limits on the Attorney General's right to initiate an action pursuant to 42 U.S.C.A. § 3613 and on the definition of prohibited acts in 42 U.S.C.A. § 3604(e). First, defendants contend that most of the representations alleged by plaintiff do not

constitute prohibited representations under § 3604(e) which provides:

"* * * [I]t shall be unlawful—

"(e) For profit, to induce or attempt to induce any person to sell or rent any dwelling by representations regarding the entry or prospective entry into the neighborhood of a person or persons of a particular race, color, religion, or national origin."

Secondly, defendants argue that even if the alleged acts were violations of the Act, the Attorney General may not proceed under the so-called "first alternative" of 42 U.S.C.A. § 3613 [1] because the acts are not sufficient in number to constitute the "pattern or practice" of resistance that is a requisite to the Attorney General bringing an action under the "first alternative." Defendants contend the Attorney General may not proceed under the so-called "second alternative" of 42 U.S.C.A. § 3613 [2] because the plaintiff has not alleged acts which deny to groups of persons rights guaranteed by the Act. Because material issues of fact remain concerning all of these issues, summary judgment is denied.

Concerning defendants' first contention that the alleged statements of their salesmen do not constitute violations of the Act, the court must first set out the statements attributed to defendants' salesmen. In response to defendants' first interrogatories, plaintiff has answered that the following allegedly prohibited representations were made by defendants' agents:

"*Mrs. Jack Walker* was approached by Mrs. Jean Rick, agent of the defendant company, in February 1969. Rick told Mrs. Walker in essence that Negroes were coming into the neighborhood and, if the Walkers waited to sell their home, they would not get what the house was worth. Mrs. Rick also said that her boss, Ray Mitchell, had instructed his sales personnel to 'work an area' after the first Negro family moved into the neighborhood.

"Mrs. Rick returned to the Walker home in March 1969 with what she alleged to be a contract for the sale of a home on Ingledale Drive located immediately behind the Walker home. Mrs. Rick told the Walkers that the house on Ingledale had been sold to an unmarried Negro couple with six children who would be unsupervised because both of the adults worked nights. The Walkers responded by listing their home with Ray Mitchell on that same day.

"*Mrs. Marian Burzywski* was approached by Mrs. Jean Rick in March 1969 during Mrs. Rick's door-to-door canvassing of the neighborhood. Mrs. Rick told her in essence that Negroes were moving into the neighborhood and if she wanted to get a good price for their home they should sell now. Mrs. Rick explained to Mrs. Burzywski about having to sell her own home in East Point, Georgia, at a loss because Negroes moved into that area.

"*Mrs. Raymond E. Turner* was attempting to sell her own home when she was approached by Mrs. Elva Cook, agent for Ray Mitchell, in April 1969 and persuaded to list with Ray Mitchell because, according to Mrs. Cook, Negroes did not like to deal directly with the seller.

"*Mrs. Norman E. Boggs*, in July 1969, was approached by a man who identified himself as an agent for Ray Mitchell Realty. He advised her to the effect that Negroes were moving into the area and it would be better if they did not wait to sell their home.

"*Mrs. Leon P. McCrimmin* was approached early in 1969 by Dewey Wof-

[1]. The Attorney General may bring a civil action when he has reasonable cause to believe "that any person or group of persons is engaging in a pattern or practice of resistance to the full enjoyment of any of the rights granted by this subchapter." 42 U.S.C.A. § 3613.

2. The Attorney General may bring a civil action when he has reasonable cause to believe "that any group of persons has been denied any of the rights granted by this subchapter and such denial raises an issue of general public importance." 42 U.S.C.A. § 3613.

ford, agent for the subject company, who solicited her listing. Mrs. McCrimmin told him that she would not be the first in the neighborhood to put her house up for sale. Wofford returned about a week later for the same purpose, telling Mrs. McCrimmin that her next-door neighbors had put their house up for sale. Mrs. McCrimmin, however, did not list, and later discovered that her neighbors had not listed their house as reported by Wofford. In April 1969 Wofford returned with a Negro couple and asked Mrs. McCrimmin if she had listed her house. When she replied negatively, Wofford asked if he could show the Negro couple her house anyway; she refused to allow him to do so.

*"Mrs. Ruth N. Hutcheson* was approached by Dewey Wofford in June 1969 who solicited her listing. He told her that all of the other homes on the street were for sale even though they did not display for sale signs. Mrs. Hutcheson did not list."

Defendants argue that the representations above should be scrutinized pursuant to the definition of "blockbusting" in a pamphlet published by the United States Department of Housing and Urban Development entitled "Fair Housing: What it Means to You." This pamphlet, designed as a guide for laymen, defines blockbusting as "persuading someone to sell housing by telling him minority groups are moving into the area." Defendants argue that upon applying the test set forth in the pamphlet it becomes apparent that some of the salesmen's statements are not prohibited representations.

Our first step is to reject the publication of the Department of Housing and Urban Development as setting forth an authoritative interpretation of 42 U.S. C.A. § 3604(e). The legislature enacts laws; and the courts, not the executive agencies, must ultimately interpret these laws. The pamphlet referred to by defendants was published as a guide for laymen. The writers of the pamphlet were concerned with publishing, in clear,

concise terms the basic thrust of the Act. By necessity, their task called for some oversimplification; ours does not.

In delineating what Congress means by "representations" in § 3604(e) the court must keep in mind the basic purpose of the sections: to prevent persons from preying on the fears of property owners and inducing panic selling resulting in monetary loss to the sellers and instability in the neighborhoods involved. In furthering this purpose, Congress surely did not intend that in order to violate the Act a salesman must say, "For my own profit, I would like to induce you to sell your house by telling you that Negroes are moving into your neighborhood." On the other hand Congress did not intend for a man to be deemed a blockbuster merely by driving through a transitional neighborhood with a sign "XYZ Realty Co." lettered on his car door. To avoid both extremes, it would seem necessary to ask: How would a reasonable man interpret the *acts* and *words* of the salesman under the circumstances in which these acts were done and these words were said. This standard would seem to accommodate the realities of real ~~estate selling~~ and avoid an easy circumvention of the statute by the narrow interpretation requested by defendants. However, the "reasonable man" standard protects the salesman from the paranoid who interprets a real estate salesman's "good morning" as part of a sinister scheme to undermine the value of his house. A § 3604(e) "representation", then, would be any acts or words that would be likely to convey to a reasonable man, under the circumstances, the idea that members of a particular race, color, religion or national origin are or may be entering his neighborhood. Of course to fall within § 3604(e), the representation must also be made for profit and it must be made *to induce the sale* of the person's property.

Viewed in the manner discussed above, some of the statements allegedly made were clearly prohibited representations. For example, Mrs. Rick's alleged

statements to Mrs. Jack Walker and Mrs. Marian Burzywski are outright violations of the Act. However, issues of fact remain as to whether these statements were made. The affidavits of Mrs. Walker and Mrs. Burzywski support the government's contentions that the statements were made. The affidavit of Mrs. Rick, offered by Defendant Mitchell, directly contradicts the substantive portions of the Walker and Burzywski affidavits. Concerning the representation made to Mrs. Boggs, there is an issue of fact as to whether the salesman actually worked for defendant; there is little question that the representation does constitute a violation of the Act. Some of the other actions and statements may not be a violation of § 3604(e) when taken out of context. However, as indicated above, the statements should be viewed in light of the circumstances in which they were made. Concerning these circumstances, there remain material issues of fact. For instance, Salesman Dewey Wofford allegedly asked Mr. Harold Davis *when* he would sell his house. When Mr. Davis indicated he did not wish to sell, Mr. Wofford stated, "You know what is going on in the neighborhood." To determine whether this statement constitutes a prohibited representation, the court must be apprised of certain background information that has not yet been presented, including:

(1) What, if anything, was "going on" in the neighborhood?

(2) Were these "goings on" known to Mr. Davis?

(3) Did Mr. Wofford have reason to believe Mr. Davis knew of these "goings on"?

(4) What was the reasonable meaning of Mr. Wofford's statement in light of the prevailing conditions in the neighborhood?

Similar problems are present regarding the salesman's acts and words concerning Mrs. McCrimmin. Mrs. McCrimmin was allegedly contacted numerous times by Salesman Wofford who asked her to list her house for sale with Ray Mitchell Realty. Salesman Rick told Mrs. Mc-Crimmin that she should sell then to protect herself against the possibility of financial loss that would result from waiting to sell at a later date. Mr. Wofford then came to Mrs. McCrimmin's house with a Negro couple and asked if she were then ready to list her home with Ray Mitchell Realty. This act, and Mrs. Rick's statement must be considered in light of surrounding circumstances in order to determine whether a prohibited representation had been made. With the above-mentioned unresolved issues of fact remaining, this court cannot determine whether the acts and words attributed to defendants' agents constituted representations prohibited by § 3604(e).

Defendants' second basic contention is that the acts and words attributed to defendants' salesmen do not constitute the "pattern or practice" required by the so-called "first alternative" of 42 U.S. C.A. § 3613 as a requisite for the Attorney General initiating this action. Defendants argue that the words "pattern or practice" were placed in § 3613 to limit the Attorney General's interference to those cases in which the resistance to rights guaranteed by the Act is part of a repeated widespread practice and policy of a particular defendant. The government argues that the "pattern or practice" limitation must be construed narrowly. The government would interpret the section as allowing intervention by the Attorney General in those cases in which it could be shown that the actions of defendant's agents "happened in the regular procedure followed by the defendant."

Before determining the motion for summary judgment, this court must attempt a definition of the "pattern or practice" limitation in § 3613. The most obvious place to look for guidance is in the proceedings and debates of both houses of Congress when the bodies were considering the Act. The Civil Rights Act of 1968 was passed in the days following the assassination of Dr. Martin Luther King, and in the midst of the "poor peoples' march" on Washington, D.C.. The "open housing" amendment

was added by the Senate to H.R. 2516, a house antiriot bill altering the provisions of 18 U.S.C.A. §§ 241, 245. The Congressional Record reveals little real discussion of the provisions of the Senate's open housing amendment. The amended bill was referred back to the House and the House approved the Senate amendments without referring the matter to a conference committee. Consequently, the proceedings are not enlightening concerning the meaning of "pattern or practice." Apparently the only judicial construction of the statute that has been reported is the construction by the court in United States v. Mintzes, 304 F.Supp. 1305 (D.Md.1969). In *Mintzes* the Court held that the defendant real estate companies had been engaged in a "pattern or practice" of resistance. The Court said:

> "In the present case defendants made unlawful representations to the owners of three properties. In several instances the representations were repeated during a long interview and reiterated in subsequent telephone conversations. They were not made *accidentally or as isolated instances*, but were made intentionally and deliberately as part of an effort to assemble a group of properties for an apartment house. The evidence before the Court indicates *a disposition on the part of defendants to use racial representations in circumstances where it appears that such representations may*

> *be effective in inducing the owner to sell."* 304 F.Supp. at 1314.

The focus of the Court in *Mintzes* seemed to be on whether the representations were isolated instances or recurring acts. The *Mintzes* Court also considered the construction by the Fifth Circuit in United States v. Mayton, 335 F.2d 153, of a similar "pattern or practice" provision in the Civil Rights Act of 1960, 42 U.S.C.A. § 1971(e).[3] In *Mayton* the Fifth Circuit has interpreted the "pattern or practice" language in the 42 U.S. C.A. § 1971(e) as follows:

> "The words pattern or practice were not intended to be words of art. No magic phrase need be said to set in train the remedy provided in § 1971 (e). Congress so understood them. And the legislative history reflects the adoption of the approach epitomized by Deputy Attorney General Walsh before the House Judiciary Committee:

> " 'Pattern or Practice have their generic meanings. In other words, the court finds that the discrimination was not an isolated or accidental or peculiar event; that it was an event which happened in the regular procedures followed by the state officials concerned.' Hearings Before the House Committee on the Judiciary on H.R. 10327, 86th Cong., 2d Sess. 13." 335 F.2d at 158–159.

No doubt, the government draws its interpretation of "pattern or practice"

---

3. Subsection (e) provides as follows: "In any proceeding instituted pursuant to subsection (c) of this section in the event the court finds that any person has been deprived on account of race or color of any right or privilege secured by subsection (a) of this section, the court shall upon request of the Attorney General and after each party has been given notice and the opportunity to be heard make a finding whether such deprivation was or is pursuant to a pattern or practice. If the court finds such pattern or practice, any person of such race or color resident within the affected area shall, for one year and thereafter until the court subsequently finds that such pattern or practice has ceased, be entitled, upon his application therefor, to an order declaring him qualified to vote, upon proof that at any election or elections (1) he is qualified under State law to vote, and (2) he has since such finding by the court been (a) deprived of or denied under color of law the opportunity to register to vote or otherwise to qualify to vote, or (b) found not qualified to vote by any person acting under color of law. Such order shall be effective as to any election held within the longest period for which such applicant could have been registered or otherwise qualified under State law at which the applicant's qualifications would under State law entitle him to vote."

from the quote above. However, in footnote 15, the *Mayton* court set forth further information concerning the meaning of "pattern or practice" in the Civil Rights Act of 1960:

"15. The following colloquy between Senator McClelland and Mr. Walsh is found in Hearings Before the Senate Committee on the Judiciary on H.R. 8601, 86th Cong., 2d Sess. 68:

" 'Sen. McClelland: Now, what constitutes a pattern?

" 'Mr. Walsh: A pattern of discrimination would be discrimination that was widespread beyond an individual case. It would be the burden to be carried by the Attorney General which would be to prove this was the usual rather than the unusual situation.

" 'Sen. McClelland: What constitutes a practice?

" 'Mr. Walsh: Practice would be very much the same thing. Not only was it usual but it has been indulged —I mean the words have their generic meaning; there is no word of art involved.

" ' *     *     *

" ' Sen. McClelland: To establish a practice there wouldn't there have to be repeated acts?

" 'Mr. Walsh: I think that would be the *general sense of it; yes, sir.*' " 335 F.2d at 159.

The *Mintzes* court decided that "pattern or practice" in § 3613 should be given an interpretation similar to that given 42 U.S.C.A. § 1971(e) by the Fifth Circuit in *Mayton*. This would also seem consistent with the interpretation given

"pattern or practice" by then-Senator Hubert H. Humphrey in his remarks to the Senate concerning the provision for enforcement by the Attorney General in the Civil Rights Act of 1964, 42 U.S.C.A. § 2000e–6(a).[4]

Senator Humphrey stated:

"THE MEANING OF 'PATTERN OR PRACTICE' IN CIVIL RIGHTS BILL H.R. 7152, AS AMENDED

"MR. HUMPHREY: Mr. President, it has been said during the debate that this bill gives the Attorney General vast and almost unlimited power to bring suit against private businesses for mere isolated acts of discrimination. That simply is not so.

"The Attorney General may obtain relief in public accommodations and employment cases only where a pattern or practice has been shown to exist. Such a pattern or practice would be present only when the denial of rights consists of something more than an isolated, sporadic incident, but is repeated, routine, or of a generalized nature. There would be a pattern or practice if, for example, a number of companies or persons in the same industry or line of business discriminated, if a chain of motels or restaurants practiced racial discrimination throughout all or a significant part of its system, or if a company repeatedly and regularly engaged in acts prohibited by the statute.

*     *     *     *     *     *

"The point is that single, insignificant, isolated acts of discrimination by a single business would not justify

---

4. The provision in 42 U.S.C.A. § 2000e–6 is substantially the same as that involved in § 3613 in the instant case: "(a) Whenever the Attorney General has reasonable cause to believe that any person or group of persons is engaged in a pattern or practice of resistance to the full enjoyment of any of the rights secured by this subchapter, and that the pattern or practice is of such a nature and is intended to deny the full exercise of the rights herein described, the Attorney General may bring a civil action in the appropri-

ate district court of the United States by filing with it a complaint (1) signed by him (or in his absence the Acting Attorney General), (2) setting forth facts pertaining to such pattern or practice, and (3) requesting such relief, including an application for a permanent or temporary injunction, restraining order or other order against the person or persons responsible for such pattern or practice, as he deems necessary to insure the full enjoyment of the rights herein described."

a finding of a pattern or practice, and thus the fears which have been expressed in this regard are totally groundless." 110 Cong.Rec. 14270 (June 18, 1964).

The "pattern or practice" provisions involved in 42 U.S.C.A. § 1971(e) and 42 U.S.C.A. § 2000e–6(a) involve limitations on the Attorney General's enforcement powers just as the provisions in § 3613 involved here. The meaning of "pattern or practice" in § 3613 would seem quite similar to the meaning in the statutes discussed above. Here the government argues that intervention by the Attorney General should be allowed if it can be shown that a prohibited representation occurred in the regular procedures of the defendant. But under the quoted language this is not enough. Clearly, a representation could occur in the regular procedures of the defendant and still be isolated (*Mintzes*, testimony of Humphrey and Walsh, *supra*), accidental *(Mintzes; Mayton)*, unintentional (*Mintzes*), or unusual (testimony of Walsh). Under these authorities the Attorney General would have to show on the contrary that representation was repeated (*Mintzes*, testimony of McClelland and Humphrey), intentional and deliberate (*Mintzes*), usual (testimony of Walsh), and that the conduct of the defendant showed a disposition on its part to use such representations where and when they would appear to be effective.

These questions also pose some others: In how many areas did the defendant operate? How many of them were transitional areas? Was its manner of doing business (advertising, for example) the same in all areas? How many agents (salesmen) does the defendant have? What percentage of these salesmen made representations? Did the defendant know or learn of the representations made by his salesmen? If so, what did he do to correct the situation?

Properly administered, this is a good law. Those charged with the adminis-

tration of its injunctive features, however, including the courts, must bear certain things in mind; otherwise overenforcement could easily become tyranny. Dealing in real estate is a legitimate business. It is well to bear in mind, also, that real estate agents did not invent racial or religious prejudice, and that they neither can nor should be prohibited from carrying on their business in a transitional neighborhood merely because such prejudices exist there—provided always that they obey the law. At the same time, what can and should be prohibited and, in the view of the court, what this law seeks to prohibit, are the actions and purposes of those economic vultures who either deliberately, carelessly, or repeatedly prey upon the fears and prejudices of homeowners for profit.

All of this puts a very heavy burden on all concerned with this law. First, it puts a heavy burden on those in charge of real estate offices in choosing and supervising their salesmen, in cautioning them about their conduct and the requirements of this statute, and in taking prompt and effective action to insure that if an isolated violation does occur, it does not recur. Second, the Act places a heavy burden upon the government and its administrators to make sure before seeking a sweeping injunction that the spirit of the Act has really been violated and that the proof in every case shows a real pattern or practice in violation of the Act and not merely an isolated, unusual, and unintentional occurrence.[4a] Finally, the determination of each such case by the court requires a discriminating judgment, not the mere application of an automatic formula or a rule of thumb. Scarcely ever, therefore, in the view of this court, can such a case be decided summarily or without a full trial with all its nuances, where all the circumstances and credibility of each witness can be weighed and correct inferences drawn. For all of these reasons the motion for summary judgment on the pattern or practice issue will be denied.

---

**4a.** Isolated occurrences are redressable by private suit, not by the Attorney General. *Compare* §§ 3612 and 3613 of the Act.

Defendant has also moved for summary judgment concerning the Attorney General's right to proceed under the "second alternative" which allows him to initiate suits when (1) he has reasonable cause to believe that groups of persons are being denied rights under the Act and (2) when this denial raises an issue of general public importance. This part of the motion raises questions closely akin to those just stated. Who are these "groups of persons"? How many are involved? What was the impact and effect of defendant's acts on the whole community? Considering that each of those injured could personally sue under the Act, was the overall wrong really one of "general public importance"? All of these questions must likewise await proof and hence final trial. This part of the motion is likewise denied.

In addition to the issues discussed above, defendants raise several other issues which should be disposed of at this time. They contend:

(1) The representations made by defendants' salesmen are exempt under 42 U.S.C.A. § 3603(b) even if they are violations of 42 U.S.C.A. § 3604(e);

(2) Defendant did not have the necessary intent to violate § 3604(e);

(3) Plaintiff should be barred from bringing this action by laches;

(4) Injunctive relief in this case would constitute an unconstitutional prior restraining on defendants' speech.

### 1. *Section 3603(b) (1) Exemption*

Defendants contend that five out of the eight allegedly unlawful representations are exempt because plaintiff's allegations involve representations that fall within the exemption of § 3603(b) (1).[5] Defendants argue these five representations alleged by plaintiff are exempt because (1) they involve representations made to the owners of single-family dwellings (2) who sold their homes prior to December 31, 1969. Defendants argue that the § 3603(b) (1) exemption applies to all single-family dwellings sold before January 31, 1969, whether these dwellings were sold by a real estate broker or the owner. Defendants claim this interpretation is necessary if the third proviso of § 3603(b) (1) is to be given any meaning. The third proviso states that after December 31, 1969, the owner of the single-family dwelling is exempt only if he sells his house (1) without the use of a real estate agent and (2) without the use of advertising. Defendants argue with some

5. Subsection (b) (1) provides: "(b) Nothing in section 3604 of this title (other than subsection (c)) shall apply to—(1) any single-family house sold or rented by an owner: *Provided,* That such private individual owner does not own more than three such single-family houses at any one time: *Provided further,* That in the case of the sale of any such single-family house by a private individual owner not residing in such house at the time of such sale or who was not the most recent resident of such house prior to such sale, the exemption granted by this subsection shall apply only with respect to one such sale within any twenty-four month period: *Provided further,* That such bona fide private individual owner does not own any interest in, nor is there owned or reserved in his behalf, under any express or voluntary agreement, title to or any right to all or a portion of the proceeds from the sale or rental of, more than three such single-family houses at any one time: *Provided further,* That after December 31, 1969, the sale or rental of any such single-family house shall be excepted from the application of this subchapter only if such house is sold or rented (A) without the use in any manner of the sales or rental facilities or the sales or rental services of any real estate broker, agent, or salesman, or of such facilities or services of any person in the business of selling or renting dwellings, or of any employee or agent of any such broker, agent, salesman, or person and (B) without the publication, posting or mailing, after notice, of any advertisement or written notice in violation of section 3604(c) of this title; but nothing in this proviso shall prohibit the use of attorneys, escrow agents, abstractors, title companies, and other such professional assistance as necessary to perfect or transfer the title, * * *"

persuasion that if the initial exemption stated in the first sentence of § 3603(b)(1) did not include single-family dwellings sold by real estate brokers, there would be no need to specifically indicate in the third proviso that after December 31, 1969 single-family dwellings would be exempt only if sold without the assistance of real estate brokers.

The only difficulty with defendants' argument is that it overlooks the fact that § 3603(b)(1) does not exempt, or even purport to exempt, the violation with which he is charged. Section 3604, for example, first forbids racial discrimination in the sale (or rental) of property (subsections (a), (b) (c), and (d)). Last, it forbids *"blockbusting" representations* made by an agent to an owner to induce him to sell, whether successful or not (subsection (e)). And while certain *sales* are exempt under § 3603(b)(1), *blockbusting representations* are not exempted anywhere or at any time. Here defendant is charged solely with "blockbusting representations" and consequently the "sales" exemption can do him no conceivable good.

## 2. *Intent to Violate § 3604(e)*

The defendant argues that the government has not alleged that he personally made any unlawful representations and he further contends by his affidavits that he had absolutely no knowledge of wrongdoing on the part of his salesmen. If this proposition were clearly without dispute and if the case were on final trial, the court might very well take it into account in determining whether an injunction, or what type of injunction, was proper or necessary. The court is fully aware that under the doctrine of respondeat superior a master is chargeable with the acts of his servant committed within the scope of his authority, but the court is also strongly of the opinion that this statute requires, if not an intentional act by the principal, at least a consciousness that the act is going on or a showing of acquiescence or conscious indifference. Certainly if a salesman's violation comes to the princi-

pal's attention and he takes no steps to redress the violation and to insure that it does not happen again, he may be said to be engaging in a "pattern or practice" within the meaning of this Act, but a principal should not be visited with a sweeping and harassing injunction if it appears that he had forbidden the practice, knew nothing of its existence in spite of vigilance, and took prompt steps to correct it once it was discovered.

But again, this is not the situation here. In the first place there is at least some evidence that door-to-door solicitation was normally used by the defendant's salesmen in areas of transition and that this was known to defendant. There is also the affidavit of Mrs. Walker which states, among other things, that defendant's saleswoman, Mrs. Rick, told the affiant that the defendant had told his sales personnel to "work an area" once the first Negro family moved in. This is not to say, of course, that real estate agents cannot "work" transitional areas if they obey the law. Again the court would rather decide the effect of this evidence after a trial and not on summary judgment.

## 3. *Laches*

▮ Defendants concede that the 180-day statute of limitations for private parties filing a complaint in federal court pursuant to 42 U.S.C.A. § 3612 or with the Secretary of Housing and Urban Development pursuant to 42 U.S.C.A. § 3610 does not apply to the initiation of actions by the Attorney General. However, defendants argue that the government has been guilty of laches because it did not initiate this action for seven months after the last alleged violation. Defendants apparently overlook the Court's holding in United States v. Summerlin, 310 U.S. 414, 60 S.Ct. 1019, 84 L.Ed. 1283 (1940), that "It is well settled that the United States is not bound by state statutes of limitation or subject to the defense of laches in enforcing its rights." *Id.* at 416, 60 S.Ct. at 1020. *See also* Nabors v. NLRB, 323 F.2d 686 (5th Cir. 1963). In the instant case the

United States is clearly enforcing a public right. No particular persons will benefit in a direct manner should the government succeed in the action; rather, the benefit will accrue to the general public. In such a case the holdings above are applicable and the doctrine of laches is not available to defendants. Furthermore, even if the doctrine of laches could be applied against the United States in this case, defendants have advanced no reason that would justify its application.[6]

### 4. First Amendment

■ Defendant argues that an injunction prohibiting defendant's agents from making § 3604(e) representations would constitute a prior restraint on speech and is thus prohibited by the First Amendment. Section 3604(e) does not make unlawful any particular speech. It makes unlawful the act of exploiting a person economically by inducing a person to sell or rent his dwelling by making certain representations to him. As such, the statute is directed at conduct, not speech. Though an injunction could be unnecessarily broad, it need not be. Injunctions are flexible remedies; they can be designed to account for various rights. Until the facts are proved it is impossible to determine whether an injunction will issue at all; the final form of the injunction obviously has not been ascertained. At this time there is no reason to conclude that an injunction cannot be framed protecting both First Amendment and § 3604(e) rights.

### Summary

In short summary, defendants' motion for summary judgment is denied because material issues of fact remain concerning (1) whether the alleged representations of defendants' salesmen violate § 3604(e); (2) whether the alleged representations of defendants are sufficient to constitute a pattern or practice as required by the first alternative of § 3612; (3) whether the alleged representations deny to a group of persons, rights granted by the Act as required by the second alternative to § 3612; (4) whether Defendant Raymond Mitchell had knowledge of any violations that did occur and whether he condoned these acts in any way. In addition, the court has ruled that:

(1) The § 3603(b) (1) exemption does not apply to these alleged violations of § 3604(e);

(2) The doctrine of laches does not apply to this action; and

6. The reasons advanced by plaintiff are discussed below:

(a) Defendants state that Mrs. Norman Boggs who could not identify the man who approached her in 1969 will be even less likely to identify the offending party by the time of trial. Of course if this is true, it will probably help defendants more than it will hurt, for the government certainly must prove the violations were made by defendant's salesmen.

(b) Defendants argue that the fact that former salesman Dewey Wofford has been discharged by the defendant corporation will make salesman Wofford less willing to cooperate with defendants. But defendants' personal relations with their salesmen should not determine when a suit could be brought against defendants for violating § 3604(e). If anything, defendants' argument addresses itself to the credibility of Wofford, should he testify at trial. This is a matter to be weighed at trial, not a reason for barring suit.

(c) Defendants argue that the passage of time will have dimmed the memory of the witnesses. Of course this is true to some extent. However, the seven-month delay here does not seem overly prejudicial when compared with the time it normally takes other civil cases to come to trial.

(d) Finally, defendants argue that Salesman Wofford was discharged on June 13, 1969 and Mrs. Hutcheson's affidavit only states that Wofford made a prohibited representation some time in June, 1969. Defendants fear Mrs. Hutcheson's memory may be dimmed and she will be unable to remember the exact date of the prohibited representation. This argument seems to cut against defendants since the government must prove that the man was an agent of the defendant realty company at the time the representation was made.

(3) The First Amendment does not necessarily prohibit the rendering of an injunction under § 3604 (e).