**UNITED STATES of America**

v.

**BOB LAWRENCE REALTY, INC., Bobby L. Lawrence, president, D. L. Stokes and Company, Inc., Peter M. Lynch, president, Mrs. Frances Heimerich, d/b/a Earl Jackson Realty Company, Reeves and Reeves, Inc., Fred J. Reeves, president, and Mrs. Ruth Stanley, d/b/a Stanley Realty Company.**

Civ. A. No. 13468.

United States District Court,
N. D. Georgia,
Atlanta Division.

Jan. 28, 1971.

John N. Mitchell, Atty. Gen., Jerris Leonard, Asst. Atty. Gen., Frank E. Schwelb and Thomas M. Keeling,* Attys., U. S. Dept. of Justice, Washington, D. C., John W. Stokes, Jr., U. S. Atty., Atlanta, Ga., for plaintiff.

Wesley R. Asinof and C. W. Eberhardt, Atlanta, Ga., for Reeves & Reeves.

Noah J. Stone and Julian E. Gortatowsky, Atlanta, Ga., for Mrs. Frances Heimerich.

Weltner & Crumbley, Charles L. Weltner, Atlanta, Ga., for Mrs. Ruth Stanley.

Jones, Bird & Howell, Atlanta, Ga., for D. L. Stokes and Co., Inc.

Glenville Haldi, Peck, Whaley & Haldi, Atlanta, Ga., for Bob Lawrence Realty, Inc., Bobby L. Lawrence, president.

## ORDER

EDENFIELD, District Judge.

In this blockbusting case brought pursuant to 42 U.S.C.A. § 3613 the government bases its complaint on three claims. The first two are based on the so-called "first alternative" of 42 U.S.C.A. § 3613 which allows the Attorney General to bring an action when he "has reasonable cause to believe that any person or group of persons is engaged in a pattern or practice of resistance to the full enjoyment of any rights granted" by the Fair Housing Amendment to the Civil Rights Act of 1968. First, the government argues that the acts of the several defendants, considered cumulatively, constitute action by a group of persons engaged in a pattern or practice of resistance to rights granted by 42 U.S.C.A. § 3604(e). Second, the government alleges that the acts of the various defendant realty companies, considered individually, constitute a prohibited "pattern or practice" on the part of each of the defendants. The third claim of the complaint is based on the so-called "second alternative" of 42 U.S.C.A. § 3613 which allows the Attorney General

---

* (Send orders, etc. to Keeling, Atty., Housing Section).

to bring an action in any case in which he has reasonable cause to believe "that any group of persons has been denied any of the rights granted by this subchapter and such denial raises an issue of general public importance, * * *" Under this alternative the Attorney General alleges that defendants have denied to groups of homeowners, rights granted by 42 U.S.C.A. § 3604(e)[1] and that this denial raises an issue of general public importance. Defendants D. L. Stokes and Bob Lawrence have moved for summary judgment, and the case is presently before the court for consideration of these motions.

Before considering the motions individually some standards should be set out. In United States v. Ray Mitchell Realty Co., (Jan. 27, 1971), 327 F.Supp. 476, this court indicated its approach in identifying a prohibited "representation" within the meaning of § 3604(e) and a "pattern or practice" within the meaning of § 3613. In considering whether an act constituted a § 3604(e) representation this court said it would look to all the surrounding circumstances and apply a sort of "reasonable man" standard. The test would be whether a reasonable man, under all the circumstances, would regard the acts and words of the defendant as constituting an inducement to sell his home because members of a minority group were moving into the neighborhood. Of course the inducement would have to be made for profit. In defining "pattern or practice" this court said that the Attorney General must show that the defendants had a definite inclination to make prohibited representations in those areas where the representation would be effective. The court indicated that in order to establish this definite inclination, the Attorney General must show that the prohibited representations were more than a mere isolated occurrence; rather, he must show recurring acts of unlawful representation. The approaches developed in *Ray Mitchell* regarding the § 3604(e) representation and the § 3613 pattern or practice will be applied in this case.

The court will first consider defendants' motions in the context of the government's claim that each defendant's individual actions constitute a pattern or practice or prohibited § 3604(e) representations. The government's case against Defendant Bob Lawrence is based on three allegedly prohibited representations made by Mrs. Doris Hammond and Mr. Wayne Murrison to residents of Juanita Street in Southeast Atlanta. (Plaintiff's Answer to Lawrence's Interrogatory No. 2.) The affidavits and depositions filed create issues of fact concerning whether the acts and words of agents Hammond and Murrison were § 3604(e) representations. In many cases, these factual issues would preclude summary judgment. However, in the case of Defendant Lawrence, the crucial question is whether the government's allegations, even if true, show a definite inclination on the part of Defendant Lawrence to make prohibited representations in those cases in which the representations would be effective. It is to this pattern or practice determination that the court directs its attention.

Historically, the main area of concentration of Bob Lawrence Realty has been an area of Atlanta that is now transitional. Bob Lawrence Realty did not move into the area after the transition from white to black had begun. Rather, Defendant Lawrence's company was active in the area before it ever became "transitional." (Affidavits of Lawrence, Hammond, Murrison.) Indeed, Lawrence's office is located in the transitional area. (Affidavit of Lawrence.) The three representations relied on by the government were made by Agents Ham-

---

1. Section 3604(e) of Title 42 U.S.C.A. provides: "For profit, to induce or attempt to induce any person to sell or rent any dwelling by representations regarding the entry or prospective entry into the neighborhood of a person or persons of a particular race, color, religion, or national origin."

mond and Murrison to three residents of Juanita Street. (Plaintiff's Answer to Lawrence's Interrogatory No. 2.) The representations were made by the agents working together on the same afternoon. (Affidavits of Hammond and Murrison.) None of the three persons contacted were ever contacted again by agents of Bob Lawrence Realty. (Depositions of Brown, Wilmer, and McCrum.) Only one sign of Bob Lawrence Realty had ever been seen in the area. (Deposition of Brown, p. 8.) On the basis of these facts, this court cannot conclude that the government has alleged facts which show a definite inclination on the part of Bob Lawrence Realty to make prohibited representations. Though most of Lawrence's real estate activity has always been in areas that are now transitional, the government has alleged only three blockbusting representations. These violations were committed by two agents, working together. The representations were made on the same afternoon; there is no indication they were repeated by Agents Hammond or Murrison, or any other agents of Bob Lawrence. When compared with Bob Lawrence Realty's total activity in the area, the three representations relied on by the government appear to be isolated incidents. The court concludes that no § 3613 pattern or practice has been established on the part of Defendant Bob Lawrence, acting individually. Thus Defendant Lawrence's motion for summary judgment is granted as to this claim.

■ Defendant D. L. Stokes and Company has also moved for summary judgment contending that the acts alleged on the part of its agents do not establish an individual "pattern or practice" of making prohibited representations on the part of D. L. Stokes. The allegations of the government relate primarily to the activities of two of Stokes' agents: Mr. T. C. Roberts and Mrs. Betty L. Smith. Defendant Stokes has admitted, for the purposes of its motion, the activities of Agent T. C. Roberts. The government alleges that Mr. Roberts made § 3604(e) representations on at least six different occasions. These representations were allegedly made from January or early February, 1969, through June, 1969. (Plaintiff's Answer to Stokes' Interrogatory No. 1.) The government has also alleged that Mrs. Betty L. Smith, another of Stokes' agents, made unlawful representations in January or February of 1970 by mailing unsolicited letters to homeowners in the transitional areas and by making at least one unlawful representation in person to a resident of the area. Stokes' answers to interrogatories indicate that during December, 1969, and January and February, 1970, Agent Betty L. Smith mailed 213 unsolicited letters to persons living in the area defined by the government as transitional. The letter on its face makes no unlawful representations.[2] However, in *Ray Mitchell, supra,* this court indicated that whether acts or words are § 3604(e) representations will be determined by

2. The letter reads as follows:
"We have many prospective Purchasers ready, willing and able, who would like to consider locating in your find neighborhood. Have you considered selling? If so, we are confident that among the large number of prospects on our waiting lists, many would be interested in your particular home.
"D. L. Stokes & Co., enjoys an enviable reputation and is one of the area's oldest and largest Realtor, with three offices in Metropolitan Atlanta to better serve you.
"Our dynamic sales department is staffed with experienced and very capable salesmen and we are confident that we can render you an invaluable service in all your Real Estate requirements, with satisfactory results and performance assured.
"Wont [sic] you avail yourself of our services and call the writer at 458-3275 or if more convenient at 443-5348 in the evening, and we shall gladly give you a free appraisal—of course, there will be no cost or obligation on your part.
"Anticipating the pleasure of hearing from you, we remain,
Yours very truly,
Betty L. Smith."

asking how a reasonable man would interpret the acts and words considering the circumstances under which the acts were done and the words were said. Though the letter mailed by Mrs. Smith contains no unlawful representations, the letter does indicate to the reader that Stokes has focused on the recipient's neighborhood, and indeed on the recipient's "particular home." Such a letter may or may not constitute an unlawful representation, considering all the surrounding circumstances.[3] Of course on a motion for summary judgment, all inferences must be against the movant.[4] When the § 3604(e) representations of T. C. Roberts are linked with those of Betty L. Smith concerning which factual issues remain, the alleged period of misconduct is about a year. The alleged unlawful representations did not occur on one afternoon as they did in the case of Bob Lawrence. On the basis of the allegations admitted by Defendant Stokes, and those concerning which factual issues remain, this court cannot conclude as a matter of law that Stokes has shown that it did not have a definite inclination to make § 3604(e) representations in those circumstances in which the representations would be effective. Thus Defendant Stokes' motion for summary judgment concerning the government's claim of an individual unlawful pattern or practice on the part of Stokes is denied.

■ The government's second claim is that all of the defendants have done acts which cumulatively amount to a pattern or practice of resistance to rights granted by 42 U.S.C.A. § 3604(e). The government contends in its original brief that "'[A]ll of the defendants, while operating in Southeast Atlanta and DeKalb County have engaged in one general pattern or practice of resistance to the full enjoyment of rights secured by 42 U.S.C.A. § 3604(e). Nor does this mean that the several defendants consciously conspired to engage in any particular activity. The substance of the complaint is that individual defendants, during the same period of time made unlawful representations to residents of the same general area for the same purpose—profit—and predictably, with the same results. * * * [O]ur burden under 42 U.S.C.A. § 3613 can be met by a demonstration at the trial that the cumulative efforts of all the defendants' unlawful activities contributed generally to the alleged resistance to federal law." Defendant D. L. Stokes argues that the government cannot prove its pattern or practice case under 42 U.S.C.A. § 3613 by simply cumulating the activities of several defendants.

In determining whether the acts of various individual defendants may be cumulated to constitute a group pattern or practice, the court must first attempt a "plain meaning" interpretation of the statute. A literal reading of § 3613 reveals no requirement that the government allege and prove a conspiracy in order to bring an action against several defendants. What the statute does require is that the Attorney General allege and prove a prohibited pattern or practice of activity on the part of a person, in the case of an action against a single defendant, or a prohibited pattern or practice on the part of a group, if the action is brought against a group collectively. In an action brought against a group, the "plain meaning" interpretation of the statute indicates that it is the action of the group as a unit that must constitute a pattern or practice.[5]

---

3. The government has supplied the affidavit of one recipient who testified that he regarded the unsolicited letter as a representation that "additional Negro families are entering the neighborhood." (Affidavit of Bostwick.)

4. "On summary judgment the inferences to be drawn from the underlying facts contained in such materials must be viewed in the light most favorable to the party opposing the motion." United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962).

5. This interpretation seems evident upon analysis of the clause involved. "Person" and "group" are correlatives. The

This plain meaning interpretation must now be tested against the purpose of the statute as revealed in the legislative history and in the interests the statute was intended to affect. The legislative history of the section is not enlightening.[6] Consequently, neither party has relied on this history as really supporting an interpretation of the statute regarding the issue under consideration. The interests protected by the statute are identifiable. The first four subsections of § 3604 protect the purchaser from various types of discrimination in the selling of homes. Section 3604(e) protects the homeowner from racial and certain other representations made for profit by third parties to induce a homeowner to sell in panic. To protect these homeowner's rights, Congress has prohibited representations that lead to infringement of the rights. The Act provides three methods of enforcement. A private party may file a complaint with the Secretary of Housing and Urban Development and initiate conciliation procedures which may eventually develop into a court action; a private party may initiate a civil suit directly in United States district courts or in state courts; the Attorney General may initiate a civil suit in United States district courts. A private party may initiate a civil action if any of his rights granted by §§ 3603, 3604, 3605 or 3606 are violated, including a single § 3604(e) representation. 42 U.S.C.A. § 3612(a). The court may appoint an attorney for the private litigant whose rights have been infringed "in such circumstances as the court may

deem just"; and the court may also allow the private litigant to proceed without payment of fees, costs or security. 42 U.S.C.A. § 3612(b). The court may grant equitable relief as well as damages to the private party, and it may allow a prevailing plaintiff to receive court costs and attorney's fees where the private party is not financially able to assume the legal fees. 42 U.S.C.A. § 3612(c). The Attorney General is more limited in the circumstances in which he may initiate an action. He must have

(1) reasonable cause to believe that
(2) (a) a person or group of persons is engaged in a pattern or practice of resistance to rights granted by the Act

*or*

*or* (b) a group of persons has been denied rights granted by the Act and such denial raises an issue of general public importance. (42 U.S.C.A. § 3613.)

Under the pattern or practice provision, the Attorney General cannot bring an action for one isolated violation as can a private party. Under the "denial to a group of persons" provision the Attorney General cannot bring an action where only one person has been harmed, as can the private person to whom the prohibited representation was made.

It is important to remember that the above limitations on the Attorney General do not involve the rights of the homeowners damaged by § 3604(e) representations; rather, the limitations relate to the enforcement procedures chosen by

phrase "of persons" following "group" is a prepositional phrase identifying the content of the group. The statute provides an either/or situation. If either a person or a group is involved in a pattern or practice, the Attorney General may initiate an action.

6. The original bill passed by the House did not contain a fair housing provision. The House Bill was considered by the Senate in the days following the assassination of Dr. Martin Luther King and in the midst of the "poor people's march" on Washington. The Senate added the

fair housing amendment to the House Bill and sent the amended bill back to the House. In the House, the amended bill was passed via a "unanimous consent" resolution which sent the bill to the President without debate in the House and without a conference regarding the Senate amendment. Nowhere in the legislative proceedings were the issues under consideration here discussed by the legislators. *But see* discussion of somewhat similar provisions of the 1960 and 1964 Civil Rights Acts in United States v. Mitchell (N.D.Ga., Jan. 27 1971), 327 F.Supp. 476.

Congress. The disagreement between the Attorney General and defendants basically involves a difference in point of view. The Attorney General seems to approach "pattern or practice" from the point of view of the homeowner. The moving defendants approach "pattern or practice" from the point of view of the realty company. To support the Attorney General's approach, it could be argued quite persuasively that it makes little difference in the result whether one realty company makes a § 3604(e) representation to ten different homeowners on a street or ten different realty companies acting independently each make one § 3604(e) representation to a different homeowner on the street. The potential end result is the same: panic selling on the part of homeowners, instability in the neighborhood, and ultimate resegregation. Thus, the Attorney General should be allowed to act for the homeowners in either situation. The answer to this argument is that it focuses on the rights rather than the procedure for enforcement of the rights.

Congress has provided two ways for private homeowners to protect themselves in the case of the ten realty companies acting independently. It has also provided for certain financial assistance in bringing the action if the court deems such assistance is proper. Thus the homeowners clearly have remedies for the wrongs committed against them by the ten companies acting independently. The rights must be distinguished from the enforcement procedures.

We conclude that "pattern or practice" must be approached from the point of view of the persons allegedly violating the Act. This was the underlying premise of this court's holding in United States v. Ray Mitchell Realty, (Jan. 27, 1971), 327 F.Supp. 476, that a pattern or practice could be shown by proving a definite inclination on the part of the defendant to make prohibited representations in those areas in which the representations would be effective. If the meaning of a group pattern or practice is to be approached from the defendant's point of view it is not sufficient merely to allege a coincidence of similar § 3604(e) representations by several realty companies in a particular geographical area. While this might be a pattern or practice from the homeowner's point of view, it is not a pattern or practice when viewed from the defendant's standpoint. The pattern or practice must be one on the part of the group acting as a unit. This would require, at the very least, a showing of some coordination of effort on the part of the defendants. Any less standard would provide the Attorney General with enforcement powers over the isolated acts of individual defendants acting independently of each other, merely because these persons' acts coincide in time or place with the acts of other violators. Concerning an isolated violation by a single person acting independently, Congress intended enforcement only by private parties. Should Congress decide that the public interest requires increased enforcement powers for the Attorney General, it may provide them. This court should not.

Defendants Stokes' and Lawrence's motions for summary judgment must now be considered in light of the standard evolved above. None of the affidavits, depositions, or answers to interrogatories show an agreement or conspiracy on the part of the several defendants to do acts violative of § 3604(e).[7] The government's affidavits

---

7. Interrogatory No. 12 of the government's first interrogatories seems possibly designed to discover acts indicating an agreement or conspiracy or at least a coordination of effort on the part of the several defendants. The interrogatory asks:

"Please indicate whether or not your company, agents or employees have received any referrals of prospective purchasers or leasees since December 31, 1967, from other real estate companies doing business in the Metropolitan Atlanta Area; if affirmative, please supply the following information. * * * *"

Most of the defendants answered this interrogatory in the negative. Defendant Stokes did not answer it at all by con-

do generally show that the various defendants made representations in the same transitional area of Atlanta during the spring of 1969. (*See, e.g.,* Affidavits of McGough, Watson, Springfield, Moreman, Laupheimer.) The depositions indicate that several companies displayed for sale signs in the area under consideration. (*See, e.g.,* Deposition of Isabel Wilmer, pp. 10, 25; Deposition of Cleo Brown, pp. 7, 12.) The affidavits and depositions also show that the real estate salesmen knew the areas under consideration were transitional. *See* affidavits of Doris Hammond and Wayne Murrison filed in support of Defendant Bob Lawrence's motion for summary judgment *and* affidavits of Sara Watson, Marion Coker, Mary Springfield, filed by the government in opposition to defendants' motions. These facts possibly give rise to an inference that the various defendants made a coordinated effort to induce the persons in the transitional areas to sell their homes in panic. For this reason defendants' motions for summary judgment concerning the government's claim of a group pattern or practice must be denied.[8]

■■ Defendants' motions for summary judgment are also addressed to the government's claim under the second alternative of § 3613: "that [a] group of persons has been denied * * * rights granted by this subchapter and such denial raises an issue of general public importance." A claim based on this alternative does not involve a pattern or practice. It involves a denial of rights to a group of persons. For the purposes of this motion, Defendant Stokes has admitted that the representations of T. C. Rogers violate the Act. ment contends that Agent Betty L. These admissions involve at least six homeowners. In addition the government- Smith's 213 letters mailed to a transi-

tional area constitute a denial to a group of persons. Issues of fact remain concerning whether those letters constitute unlawful representations, and whether the letters had a significant impact on a "group of persons." These factual issues preclude this court's summary judgment on the issue of whether rights have been denied to a group of persons within the meaning of § 3613. To the extent that Defendant Lawrence's motion applies to the government's "denial to a group of persons" claim, that motion is also denied, since factual issues remain concerning whether the § 3604(e) representations were made to at least three homeowners.

■ Defendants Stokes and Lawrence also contend that even if they have violated the Act in the past, injunctive relief is no longer appropriate because defendants are no longer in violation of the blockbusting prohibitions. Defendants rely on United States v. W. T. Grant Co., 345 U.S. 629, 73 S.Ct. 894, 97 L.Ed. 1303 (1953), in which the Supreme Court affirmed a district court's refusal to issue an injunction against violations of § 8 of the Clayton Act. The government had sought an injunction prohibiting interlocking directorates. The defendant resigned from the directorates in question and the district court refused to issue an injunction because it concluded there was not the slightest threat that defendant would attempt any future activity in violation of § 8. In this case both Stokes and Lawrence have stated in affidavits that they intend to comply with the provisions of the Fair Housing Amendment. This action is brought against several defendants, and one of the government's claims is that the defendants as a group have violated the Act. Until the issue is put to proof, it is difficult to determine exactly what, if any, activities of the defendants are

sent of government counsel. Defendant Lawrence stated it had received referrals from other real estate companies.

8. Of course on a hearing on the merits, the court may give credence to the inference

most reasonably drawn from the facts, rather than draw all inferences against the moving defendants as it must on these motions for summary judgment.

important in effecting a coordinated effort. For instance, the possible significance of the multiple listing service has not been fully dveloped. Concerning Defendants Stokes and Lawrence, the system of referrals from other realty companies has not been fully disclosed. The court concludes that until the record is further developed, neither the propriety nor the form of any injunctive relief regarding Defendants Stokes and Lawrence can be determined.[9] Thus Defendants Stokes' and Lawrence's motions for summary judgment on the grounds that injunctive relief is no longer appropriate are denied.

In summary, the court grants a partial summary judgment for Defendant Bob Lawrence Realty on the issue of whether Defendant Bob Lawrence Realty has participated in an *individual* pattern or practice of resistance to rights granted by § 3604(e). As to all other issues, the motions of both Defendants Bob Lawrence Realty and D. L. Stokes and Company are denied.

---

9. *See also,* United States v. West Peachtree Corp., 437 F.2d 221 (5th Cir., 1970), where the Fifth Circuit indicated the defendant's good faith and present disposition in a § 3604 case were not determinative concerning whether an injunction should issue.